UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **ROBERT A. BRADFORD** | **CIVIL ACTION NO. 3:20-01585** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **MOREHOUSE PARISH SCHOOL BOARD, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Before this Court is a Motion for Summary Judgment [Doc. No. 30] filed by Defendants Morehouse Parish School Board ("MPSB") and David Gray ("Gray"). An Opposition [Doc. No. 33] was filed by Plaintiff Robert A. Bradford ("Bradford") on May 31, 2022. A Reply [Doc. No. 34] was filed by MPSB and Gray on June 7, 2022.

For the reasons set forth herein, MPSB and Gray's Motion for Summary Judgment is GRANTED.

**I.     BACKGROUND**

On December 7, 2020, Bradford filed a Complaint [Doc. No. 1] against MPSB alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*[1]

Bradford was employed by MPSB on September 20, 2017, working at Bastrop High School, teaching "Life Skills" and "Job Skills."[2] Bradford worked as a physical education ("PE") teacher at H.V. Adams Elementary School in the beginning of the 2018-2019 school year, but prior to the school year ending, he was transferred to Delta Junior High School ("Delta") as an elementary PE teacher.[3]

---

[1] Louisiana State Law claims have been dismissed [Doc. No. 7].
[2] Bradford had previously been employed by MPSB in 1992-1995, and again in 2000-2006.
[3] Bradford Deposition [Doc. No. 30-4, pp 38-50].

Bradford was terminated on April 12, 2019. MPSB and Gray maintain Bradford's termination was due to an incident which occurred on March 13, 2019, in which Bradford allegedly used unnecessary physical force toward two second-grade students. Bradford was alleged to have grabbed one second-grade student, C.M, by the arm, shook him, and then threw him down, causing him to hit his head on the bleachers. Bradford was also alleged to have grabbed another second-grade student, J.N., by the shoulder, picked him up by his shirt, and brought him to a standing position on his toes.[4]

On March 13, 2019, MPSB Superintendent Gray received an oral report from Ralph Davenport ("Davenport"), MPSB Supervisor of Child Welfare & Attendance, who reported that while at Delta on the morning of March 13, 2019, Davenport observed several parents in the principal's office complaining to the principal about the physical abuse by Bradford to their children. Gray directed Davenport to further investigate the allegations. Davenport returned to Delta and provided Gray with a written report on March 18, 2019, which confirmed the allegations.[5]

The principal of Delta, Karmen Murry ("Murry") interviewed students in the class individually and in small groups. MPSB and Gray maintain Murry's notes[6] confirm the incidents. Bradford argues the notes of interviews are inconsistent.

After the investigation, Bradford was discharged. MPSB and Gray maintain Bradford's race or age had nothing to do with his termination, and Bradford was terminated based upon his action toward the two students.[7] MPSB and Gray maintain that Bradford was not treated

---

[4] [Doc. No. 30-2, p. 2].
[5] Affidavit of David Gray, [Doc. No. 30-10, pp.4-5].
[6] [Doc. No. 33-9, and 33-10].
[7] Affidavit of David Gray, [Doc. No. 30-1, ¶12].

differently from similarly situated white employees and was replaced by a person of the same race.

Although Bradford initially listed seven comparators, he argues only two, Emily Fulmer ("Fulmer") and Rose Clayton ("Clayton"), as comparators in his brief.[8] Bradford alleges the incident involving the second-grade students is untrue and that he was fired because he was black and fifty-six years old.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is

---

[8] [Doc. No. 33-1, p.1].

unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

  **B.**  **Title VII Race Discrimination**

The ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against plaintiff remains at all times with plaintiff.[9] Whereas here, plaintiff relies solely on circumstantial evidence of discrimination, the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework applies. This framework consists of three prongs: 1) the plaintiff must establish a "*prima facie* case" of discrimination; 2) if the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse employment action; and 3) if the employer satisfies its burden, the burden then shifts back to plaintiff to show the reason is a pretext.[10]

### A. Prima facie case of discrimination

To establish a *prima facie* case of discriminatory discharge under the *McDonnel Douglas* framework, the plaintiff must show that he was 1) a member of a protected class; 2) qualified for his employment position; 3) terminated by the employer; and 4) replaced by someone outside of the protected class or treated otherwise less favorably than others who were similarly situated but outside the protected class.[11]

Defendants do not dispute the first three elements[12] but maintain Bradford is unable to establish the fourth element – that Bradford was replaced by someone outside of the protected class or treated less favorably than other similarly situated employees outside of the protected group. Because the evidence demonstrates Bradford was replaced by someone within his protected group,[13] the issue is whether Bradford can show that he was treated differently than similarly situated employees outside of his protected group. "Similarly situated" is construed narrowly, requiring the employee's situations to be nearly identical.[14]

---

[9] *Texas Dept. of Cmty. Affs. V. Burdine*, 450 U.S. 248, 253 (1981).
[10] *Jones v. Gulf Coast Rest. Group, Inc.,* 8 F.4d 363, 368 (5th Cir. 2021).
[11] *Ross v. Judson Independent School District*, 993 F.3d 315 (5th Cir. 2021).
[12] [Doc. No. 30-2, p. 13].
[13] Affidavit of David Gray [Doc. N. 30-10, ¶ 9-10].
[14] *Zeng v. Texas Tech Univ. Health Sci. Ctr. At El Paso*, 836 F. Appx. 203, 209 (5th Cir. 2020).

5

An employee may be "similarly situated" when the employee being compared held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable violation histories. The comparator's violation history must also be of "comparative seriousness" which refers to the employee's misconduct, not the punishment which may be available under the employee's policies.[15]

In Bradford's Amended Complaint, he lists seven comparators,[16] however, in his opposition,[17] Bradford only argues Comparator One (Fulmer) and Comparator Three (Clayton) as comparators.[18] Because Bradford did not argue in his brief that the other five were comparators, and because the uncontested evidence shows the remaining five are not proper comparators,[19] only Fulmer and Clayton will be discussed as comparators.

### Emily Fulmer

Bradford maintains Fulmer is a white, female teacher that choked a student, that the incident was investigated, and that Fulmer was not disciplined.[20] In Bradford's Opposition, he argues Fulmer allegedly choked one of her students on February 28, 2019. The incident was witnessed by another teacher, Marisa Bible ("Bible"). The student ("O.R."), wrote a statement in which he said "Mrs. Fulmer tried to grab me, but she hit my neck. I got mad and told her Ima punch you in the face if you touch me again."[21] Fulmer's statement stated "I asked O.R. to look at me and he refused. I reached for the front of his shirt to pull him to me, and he starts yelling

---

[15] *Lee v. Kansas City S. Ry. Co.,* 574 F.3d 253, 260-70 (5th Cir. 2009).
[16] [Doc. No. 7, ¶¶81-92].
[17] [Doc. No. 33].
[18] [Doc. No. 33 pp. 4-7, pp. 15-16].
[19] [Doc. No. 30 pp. 18-25].
[20] [Doc. No. 7, ¶¶ 80-81].
[21] [Doc. No. 33-6 pp. 6-7].

let me go and you are choking me."[22] Bible wrote that O.R.'s statement saying Fulmer was choking him was a fabrication. Bible wrote that Fulmer never touched O.R.'s neck. None of the statements, not even O.R.'s, indicated Fulmer was choking him.[23]

Fulmer's deposition (taken on March 24, 2022)[24] was attached. She was still a fifth-grade teacher at Delta and had been for approximately eight years. Fulmer detailed the incident with O.R. She testified that O.R. was brought to her class by Bible. O.R. was yelling and tried to leave the classroom. She reached for his shirt, and O.R. started yelling that Fulmer was choking him. Fulmer testified that O.R. leaped at her to attack her, but Bible jumped in front of O.R. Fulmer denied choking O.R. and actually testified that she never even touched O.R. because he jerked back. Her intentions were to pull O.R. back into the classroom and shut the door.

O.R. was suspended for the incident and when he came back to school he apologized to Fulmer. Fulmer filled out a Louisiana Department of Education School Behavior Report on the incident.[25]

Gray, Superintendent of MPSB, submitted an Affidavit regarding this.[26] In the Affidavit, Gray stated the principals at Delta investigated the incident involving Fulmer and found no reason to report anything to Gray because the choking incident did not occur. Gray received no complaint from the parent and was not forwarded any complaint by a parent from the school.[27]

---

[22] [Doc. No. 33-6 pp. 2-3].
[23] [Doc. No. 33-6, pp. 4-5].
[24] [Doc. No. 30-9].
[25] [Doc. No. 33-6].
[26] [Doc. No. 30-10].
[27] Id. ¶20.

### Rose Clayton

In his Amended Complaint, Bradford alleges in paragraphs 85 and 86 that Clayton called a child a "black b***h" in front of a number of students. One of the principals at Delta, Murry,[28] testified at her deposition (taken on March 23, 2022) that she is currently the Curriculum Coordinator for the Morehouse Parish School System. She was principal at Delta from January 2018 to July 2021. She was co-principal with Carla Martin ("Martin").

She investigated the incident involving Clayton.[29] The incident was fully investigated by her. She never made a report to Superintendent Gray because there was no evidence to corroborate that the incident actually happened.[30]

Superintendent Gray also confirmed[31] that he was not advised of the incident involving Clayton because the principal investigated the complaint and found no evidence to support the allegation.

### Robert Bradford

On March 13, 2019, Superintendent Gray received an oral report from Davenport, the Supervisor of Child Welfare & Attendance, who reported that while at Delta, he observed several parents in the principal's office complaining to the principal about physical abuse by Bradford to their children. Gray directed Davenport to further investigate the allegations. Davenport returned to Delta and provided Gray a written report on March 18, 2019.[32] Davenport's report indicates Bradford received complaints of shaking a student, causing him to fall to the floor,

---

[28] [Doc. No. 30-7].
[29] She also investigated the incident involving Fulmer.
[30] [Doc. No. 30-7, pp. 16-17].
[31] Affidavit of David Gray, [Doc. No. 30-10 ¶ 23-24].
[32] [Doc. No. 33-16].

picking up another student by his shirt to place him against the wall, and of using inappropriate language with the students.[33]

Davenport and Murry interviewed Bradford, who denied the allegations. Davenport's report indicated evidence from the students in the class strongly showed that Bradford used unnecessary physical force to discipline the students involved.

The deposition of Murry was also attached.[34] Murry testified that she, Martin and Davenport interviewed students and staff with regard to the allegations against Bradford. Murry conducted most of the interviews. She took interview notes.[35] The interview notes were taken on March 13, and March 14, 2019. Some of the second-grade students were interviewed individually and some as a group. Bradford argues the notes were inconsistent. However, the vast majority of the students interviewed gave facts consistent with Bradford getting angry at the second-grade class, grabbing C.M. by the arm and throwing him down, and in picking J.N. up by his shirt and putting him against the wall.

The first group of six students[36] all told the same story that Bradford picked J.N. up by the shirt and J.N. running away, with Bradford running after him like he was going to hit him with a bottle. One of the six interviewed also said Bradford grabbed his arm and almost made him cry. An individual student interviewed said some of the kids were under the bleachers, and Bradford began beating on the bleachers resulting in the students running.[37]

---

[33] Indicating the "B and S" words.
[34] [Doc. No. 30-7].
[35] [Doc. No. 33-10].
[36] [Doc. No. 33-10, p. 1].
[37] [Doc. No. 33-10, p. 2].

One student, D.W., issued a hand-written statement that he was hit on his arm. The statement was difficult to understand because it was written by a young child, but the statement indicated that he was hit.[38]

A group of five students was interviewed the next day, March 14, 2019.[39] The students indicated that some of the students were going under the bleachers. Bradford told them to get out and get up against the wall. J.N. did not get up and Bradford told him to "get his ass up," yanked J.N. up hard, and J.N. ran away, resulting in Bradford throwing a bottle at him.

A second group of five students was also interviewed on March 14, 2019. This group stated J.N. was doing cartwheels by the wall. Bradford yelled at J.N. to stop. J.N. took off running and Bradford threw a bottle at him. The students said Bradford said the "B" word and the "S" word.

A third group of five students was interviewed on March 14, 2019.[40] A group of students were going under the bleachers. Bradford told everyone to get up against the wall. Bradford pulled J.N.'s shirt collar. J.N. said he was going to tell his mother and Bradford said he was not scared of his mother. J.N. ran out the door and Bradford tried to hit J.N. with a bottle. The students stated they heard Bradford cussing, using the "B" word.

An individual student (who evidently wrote out his own statement)[41] indicated "he" was shaking the student hard, and the student fell down.

Another individual student stated Bradford pushed a student down with his hand and shook him hard. The student did not cry.[42]

---

[38] [Doc. No. 33-10, p.3].
[39] Id. p.4.
[40] Id. p.5.
[41] Id. p.6.
[42] Id. p.7.

Another individual student (interviewed on the day of the incident) said "he" pushed a student, yanked, and shook him, resulting in the student bumping his head.[43]

J.N. stated Bradford put his hand on him because he went to the bathroom and was playing. He said Bradford tried to hit him with a water bottle.[44] Another student said Bradford grabbed a student on the shoulder and yanked.[45]

J.N. also stated Bradford told them to go to the wall. Bradford grabbed him by the shoulder to put J.N. on the wall. Bradford became angry and told them to go outside, and Bradford was acting like he was going to chase J.N.. J.N. went to the office to call his mother.[46]

C.M. stated Bradford started getting angry for no reason. Bradford held his arm and when C.M. tried to get away, Bradford threw him into the bleachers. C.M. said he hit his head on the bleachers. Another student also verified the incident indicating Bradford grabbed C.M.'s arm and threw him, that Bradford was angry, called everybody "stupid", and had a water bottle in his hand, acting like he would hit J.N.[47]

Another individual student was interviewed on March 14, 2019. The student stated some of the students started climbing onto and under the bleachers. The students apparently started to annoy Bradford by doing this, and he told them to stand against the wall. J.N. did not want to line up against the wall, and Bradford started running after J.N. and acting like he was going to throw a bottle at him. J.N. said he was going to tell his mother and Bradford said, "what's your mama going to do to me?"[48]

---

[43] Id. p.8.
[44] Id. p. 10.
[45] Id. p. 10.
[46] Id. p. 11.
[47] Id. pp. 12-17.
[48] Id. p. 18.

11

In his Affidavit, Superintendent Gray stated Davenport reported the incident to him, and he had Davenport investigate. After the students were interviewed, confirming the allegations against Bradford, Gray sent a letter to Bradford, terminating him.[49]

In conclusion, it is the Court's opinion that Bradford was not treated less favorably than Fulmer and Clayton. The obvious difference is that there was no corroborating evidence that Fulmer or Clayton did anything wrong, and there was corroborating evidence from almost the entire second-grade class that Bradford did. Therefore, this Court finds that Bradford has not made a *prima facie* case of discrimination under Title VII.

### B. Legitimate Reason for Employment Action/Pretext

Even if Bradford were to make out a *prima facie* case of discrimination, MPSB has articulated a legitimate reason for Bradford's termination – violation of MPSB's policy against unnecessary physical force and/or improper use of corporal punishment.[50] Therefore, the burden of proof would shift to Bradford to prove that the legitimate reasons offered by the Defendant were not its true reasons but were just a pretext for discrimination. A plaintiff proves pretext either directly by showing a discriminatory reason more likely motivated the employer's decision, or indirectly showing the employer's explanation is not worthy of credence.[51]

Bradford has not met this burden. Unlike the allegations against Fulmer and Clayton, the allegations against Bradford were substantiated by the second-grade students in Bradford's class. There is no evidence of pretext.

Therefore, the Motion for Summary Judgment filed by MPSB and Gray [Doc. No. 30] is GRANTED with regard to Bradford's Title VII racial discrimination claim.

---

[49] [Doc. No. 30-10 ¶¶ 4-7].
[50] [Doc. No. 30-10, pp.15-16].
[51] *Burdine*, 450 U.S. 256.

C.     Age Discrimination Claim

Bradford's remaining claim is based upon age discrimination under the ADEA. Like Title VII, claims involving circumstantial evidence are also evaluated under the *McDonnell Douglas* burden-shifting standard.[52] Bradford must establish a *prima facie* case by demonstrating that: 1) he was discharged; 2) was qualified for the position; 3) was within the protected class at the time of discharge; and 4) was either replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of his age.[53]

The first three elements are uncontested. As to the fourth element, Bradford was fifty-six years old at the time of his termination. Bradford was discharged on April 12, 2019, toward the end of the school year. Bradford was initially replaced, for the remainder of the school year, with a substitute teacher, Carolyn Glosson ("Glosson"), who was fifty-nine years old, three years older than Bradford.[54] At the beginning of the 2019-2020 school year, MPSB only received one application by a certified teacher, Raymece Savage ("Savage"), a black male that was younger than forty years old.[55] Because Glosson was a substitute teacher and a temporary replacement, this Court finds Bradford was replaced by Savage and has therefore made out a *prima facie* case.

However, as noted in the discussions in Bradford's Title VII claim, MPSB and Gray have articulated a legitimate reason for Bradford's termination, and Bradford is unable to prove the termination was pretextual. Therefore, Bradford's age discrimination complaint also fails.

The Motion for Summary Judgment filed by MPSB and Gray is GRANTED as to Bradford's ADEA age discrimination claim.

---

[52] *Goudeau v. National Oilwell Varco, L.P.* 793 F.3d 470, 474 (5th Cir. 2015).
[53] *Rachid v. Jack in the Box, Inc.* 376 F.3d 305, 309 (5th Cir. 2004).
[54] Affidavit of David Gray [Doc. No. 30-10, ¶9].
[55] Id. ¶10.

13

### III. CONCLUSION

For the reasons set forth in the Memorandum Ruling, the Motion for Summary Judgment filed by MPSB and Gray is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

Monroe, Louisiana, this 22nd day of June 2022.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**